Good morning. May it please the court, my name is Sarah Stone and I represent the appellant Pete Rogovich. I hold in my hands the sum total of the briefing of appellant counsel in this case, less than 15 pages of actual argument. While this would be troubling in any case, it's especially troubling when you look at the facts of Mr. Rogovich's case. This was a lengthy trial, especially for its time. It ran from May 10th to June 1st, guilt phase alone. Four experts testified. There were two full competency evaluations and sentencing didn't take place until a year later, due mostly to concerns with his competency. And it was a case that the trial judge himself qualified as extremely complicated. Strickland tells us that deficient performance and prejudice to a defendant's case violates constitutional right to counsel. And that's exactly what happened here. Performance was woefully deficient and it does not take 20-20 hindsight or second-guessing to reach that. What's especially frustrating about Mr. Rogovich's case is that appellant counsel actually had a lot to work with. It was a hard-fought case. Trial counsel raised several objections, raised several issues, including many with competency, and there was weighty mitigation. Most of all, appellant counsel didn't raise a single sentencing issue in a capital case, and not just any capital case. I think it's important to be clear that this is a capital case where an affirmative defense was raised. So this is a capital case where the defendant admitted to the murders. Sentencing phase was especially important when that affirmative defense failed. Now, with respect to your IAC claim, you raised the question of the failure to challenge the multiple homicide provision, as well as the closing remarks. Why don't you address which is your stronger among those claims? Your Honor, I believe that F8 is the strongest factor, and that is where I'd like to start. Okay. The reason I believe that is under Arizona law, F8 is an aggravating factor that's given extraordinary weight. And so reasonably competent counsel, without any indications in the record, would have looked for something to challenge this extraordinarily weighty factor. Again, especially in a case, and I don't mean to be redundant, but a case like Mr. Rogovich's where mitigation was weighty. In the first homicide where F1 and F8 did not apply, only the F2 factor applied, the mitigation was sufficient to call for life. So there is a reasonable probability that without this extraordinarily weighty factor, that the mitigation would have tipped back in the favor of life for Mr. Rogovich. The appellate court in Arizona considered de novo all of the various mitigating and aggravating factors as it felt it was required to do. So in view of its undertaking that obligation, how was any failure of counsel to ask it to do what it did prejudicial? Your Honor, I submit that independent review, at least in this case, is not sufficient to undo any prejudice that counsel's deficient performance caused. Cases, numerous cases, going all the way back to the prejudice to Mr. Rogovich is that, again, F8 is a factor that carries extraordinary weight. This is, I'm sorry. No, go ahead. This is not Multiple homicides, and there's no, everyone agrees that there were three homicides committed in short order. Right, but as Ring and even the case that trial counsel relied on here, Laver's states multiple homicides is not enough to find this, or find the multiple homicides factor. You have to have spatial, temporal, and motivational connection. And in this case, the trial judge himself stated that he struggled with finding motivation at all, much less a motivational connection between the three crimes. This would have triggered reasonably competent counsel to go, this is a problem. What, under Arizona law, this was, as I recall, the Arizona Supreme Court opinion was written by Justice Feldman. And I'm just wondering, Arizona has had a lot of capital cases, a lot, and Justice Feldman has seen a lot before he retired. So what under Arizona law tells you that had this argument about the lack of motivational tie would have been successful? That all three factors are required. What the court did here was decide that the continuing course of conduct was enough. Yes, and you say that that is incorrect as a matter of Arizona law. And I am trying to understand, in the context of a spree, where there's no more motivation for one, you know, it seems to be the same, that there has to be some motive other than that he was on a spree and killing people who happened to be there. Under every single other Arizona case that has looked at, that has applied the F8 factor, even where the motivational connection between the cases was not admitted to or clear in the record, there was some connection. The Lavers case that the court relied on, it was a domestic dispute. The Cook case that the State relies on significantly in their briefing, it was very clear that it was witness elimination. Every single other case, there is something that is one of the languages is obvious that any reasonable person would read, that this is the connection. It's almost always witness elimination or some sort of domestic dispute. The Jerv case was revenge. Here, there was nothing, not a single connection. And so without that motivational connection, there is only a statement. Well, that seems to be, you seem to be arguing that there has to be a rational reason for the killing. And I don't see that in Arizona law. I see cases where there are motives, but I don't see that quite as clearly as you seem to say. And I find it difficult to see that the why the, if that were the case, if there are motives, that the Supreme Court wouldn't have caught it. Your Honor, I agree with you that it doesn't say the connection has to be, I'm not aware of any case that says it has to be rational, but there does have to be some sort of motivational tie. And the trial judge himself said he could not find that and he struggled with that in this case, and that continuing course of conduct was enough. Well, let me, I'm struggling, I think, with the same issue, and maybe it's the word motivational. If someone simply decides to kill randomly and does that, is that not a tie-in, even though it's random? I don't believe it is enough. And, again, it's this especially weighty factor. There needs to be the evidence to support it. And they've required these three specific things, and usually temporal and spatial is easy and clear, and the motivational is the factor that needs to be proven before this especially weighty aggravator that calls for death can be given. So if someone randomly kills people all in the same place at the same time, which is what happened here, essentially, that that automatically, he's exempt from the, as a matter, your position is under Arizona law, he's exempt from that aggravator. There may be other aggravators that apply, but without a motivational connection, that aggravator does not apply. Okay. And your best Arizona case is? For that factor, Ring, I believe, clarifies it, although I concede that was not case law at the time that the court could have relied on. The Lavers case is the case the trial court relied on, and that case specifically states that all three are required. But it doesn't define what motivational tie is. No, but in that case, there is a clear motivation found, and again, that was a domestic dispute where a mother and daughter were killed, and probably revenge on the mother killing the daughter as well. Back to the question of independent review and why that doesn't cure the defect in this case, numerous Supreme Court cases going back from Gideon to the most recent in Martinez emphasized the importance of the role of counsel in our adversarial system. The court's role in independent review is not the same as the role of a partisan advocate. And this may sound like a flippant response, and I don't mean it as so, but if independent review is enough, why have counsel at all? Especially in this case, independent review was insufficient. Counsel's errors here were so serious that he was not functioning as counsel. Counsel certainly are helpful, and we appreciate your being here. But the question isn't whether it's a good idea or whether it's constitutionally required to have counsel. The question is, if counsel does less than an ideal job, what is the prejudice? And so independent review, it seems to me, can play a role in determining the level of prejudice, regardless of the point that you're making. So I'm still struggling to see what the Arizona court would have thought about differently had counsel made more or different arguments. And I agree that in some cases, independent – I'm not here to argue that independent Rogovich's case, however, it was a complicated case. It was a case with weighty information – mitigation, excuse me. And in it – in cases with more vigorous briefing and more vigorous advocacy, independent review may be sufficient. But in this case, it wasn't. Here, Mr. Rogovich was left with what Anders warns against, which is that the bear record was the only thing that could speak for him, especially as to sentencing issues, because there wasn't a single sentencing What would the Arizona court's weighing of these factors – how would it have changed in your view? How would it be different? How would the outcome have been different if the arguments were made? Is there anything other than this motivational issue that you've previously mentioned? Well, we also raised the prosecutorial misconduct issue, and I can get to that now if you'd like. What would have been different is that with the assistance of appellate advocacy, there's a reasonable probability, had this F-8 factor been challenged, had prosecutorial misconduct statements that went to the heart of the defendant's affirmative defense, which was the insanity defense, been challenged, that the result would have been different. Mr. Rogovich was abandoned by counsel. He had counsel who stood up at oral argument and said, all of my issues are foreclosed. I'm here to answer questions. And his response to those questions was, the judge did everything right. The prosecutor did everything right. He bolstered the State's case by those statements. He certainly didn't serve as an advocate at best. He served as a friend of the court. And every case tells us from Evitz on with the appellate counsel, that is not enough. I'm sorry. When was the Supreme Court, Arizona Supreme Court's decision in this case? What was the date of it? The date of the decision? Yeah. It appears to be 2000, I believe, wasn't it? 1997, maybe? 1997. 1997. See, the one problem I have is that the principal, one of the principal arguments that was made, as I recall, by his counsel to the Supreme Court of Arizona was, Mr. Kemper, was the argument, the same argument that you, similar argument that you made to us concerning the waiver of the right to object to the insanity defense. And as I understand it, so straighten me out on this, the same lawyer had presented the same argument to the Arizona Supreme Court the preceding year in 1996 and had lost. That is correct, Mr. Kemper did represent Earls. I, in terms of how a lawyer who has already lost the issue that he is raising should approach a bench having preserved that issue for Federal review, it doesn't seem to me that he should have, that we should hold that he should have argued the issue all over again, having briefed it and lost. The problem with Mr. Kemper's performance wasn't just those three precluded issues, the problem was issues that weren't raised. Trial counsel in this case filed a sentencing memorandum specifically stating they wished to preserve issues for appeal. In oral argument, Mr. Kemper was directly asked by the Supreme Court why he didn't raise any sentencing issues. The Court was concerned about this as well. His statements, statement first was that he searched the record with a fine-toothed but that statement was followed up by inaccurate statements about the case that showed there was no strategy and that he misunderstood collateral review. He stated that there were 17 mitigating factors raised when there were in fact only six. He said there were 16 factors found, the only one wasn't rehabilitation, that factor wasn't raised. And then he stated he didn't believe in raising issues for preservation and that his understanding of case law was that he could always come along in Rule 32 proceedings and those issues could be raised. When you look at cases that were boilerplate preservation issues like Walton and Ring, it shows just how damaging Mr. Kemper's lack of understanding of collateral review or his belief on what his role was as appellate counsel. I don't see how that, other than I understand your argument with respect to the aggravator, but I don't see how that really affected what you are arguing he should have done that would have, beyond that, would have affected the judgment of the Supreme Court. Our position, Your Honor, is that had Mr. Rogovich had someone serving in the role as counsel, not just someone who was an attorney in name standing up and serving essentially as a friend of the court, that the result would have been different. The F-8 factor was an issue that was clear and obvious. It was an issue that I will concede was objected to in a different context. It was objected to that both F-1 and F-8 were applied together, but it was objected to by trial counsel. It was an issue that trial judge specifically stated he struggled with, and it was absolutely unreasonable for appellate counsel to fail to raise this claim. There was no contrary authority that said you don't need motivational connection, that you need all three to meet this especially weighty factor. This failure to do so left the State Supreme Court with just the bare record. So any chance that Rogovich had, and again, this is what Anders warns about, any chance to show that he had hidden merit to his issues was denied by basically being abandoned by counsel as to sentencing issues. And again, I would just reemphasize that the F-8 factor is one that has extraordinary weight. And maybe in another case, and I know that you all have seen those where the court finds the mitigation is of little weight or vastly outweighed by the aggravation, this was not that case. This was a case where in the first murder where only F-2 applied, life was the appropriate sentence. Counsel, do you want to say anything about the consent to the intentity defense? Your Honor, our position is that the Supreme Court both applied unreasonable application of the facts when they found that Mr. Rogovich was present for all critical moments, and he was not present for jury selection. I know that the State has responded that there were several pretrial hearings where insanity defense was discussed. But I would submit that until it's actually raised, and with the 404B ruling, the Court delayed that until the insanity defense was actually presented, recognizing that at any time that defense could be changed, all they had to do was notice that they were not locked into it. The first time the insanity defense was irrevocable was at jury selection, and Mr. Rogovich was not present for that. And at jury selection, it was clear that several jurors struggled with the idea of that defense. But there's no thing in the record, is there? At least I didn't see anything that suggested that Mr. Rogovich objected to the insanity defense. No, Your Honor. We concede that point. Mr. Rogovich never objected during the proceedings. However, what is in the record is that he was on numerous medications. Although during the proceedings, he was found competent to stand trial. But he was competent. And you're not challenging the competency finding. He was found competent to stand trial. And that's no longer an issue before us. Well, I wish that I could raise it. Unfortunately, it's not a preserved issue. I think it was error. Well, regardless of the reason, it's not before us. And three of the four doctors found him competent. So there's certainly a factual basis for it. It is not. And in another, I would submit, active and effective assistance, Mr. Kemper conceded that fact in his briefing. We argue that. So it's a given for us that he was competent to stand trial. Based on the record. And how does that affect the consent to present the insanity defense issue? It affects the consent to present the insanity defense because Mr. Rogovich, as I stated, presented an affirmative defense. While the burden of proof was still in the State, Mr. Rogovich admitted through his counsel to every element of the offense other than why it happened. Because of that, our argument is that this is akin to a waiver. In waiver cases, while the level of competency is not higher because there is a duty to inquire into voluntariness and whether a defendant truly understands the waiver of the rights, in Godinez, Edwards, those cases, there is, while not a higher level of competency, a higher step that a court needs to take. And our position is that when faced with a defendant who the court was aware was on numerous medications, previously trial counsel had expressed concerns about ability to communicate with him, that there were times that he did not understand what was going on. This was someone whose special care should have been taken to make sure he understood the consequences. What is this? Is this a due process issue? Is that what you're claiming? Yes. And so is your argument really that, in terms of the Federal issue, that he has to go through a kind of a Rule 11 guilty plea, colloquy the judge with the defendant in order to understand what the insanity defense is? Is that what the argument is? Yes, Your Honor. Our argument is that either similar to a guilty plea or similar to the decision to represent oneself, that Mr. Rogovich should have been made aware of the consequences, potential consequences, of raising an affirmative defense where he admitted to every single element of the crime. Is it your view that that rule would have to apply to any affirmative defense, for example, self-defense, justification, any number of other affirmative defenses that might be raised? No, Your Honor. The only issue that's before this Court in the case that Mr. Rogovich is facing I think that the implications of this argument are only to a defendant presenting insanity. Well, why would it be different, though? I mean, if the theory is that an affirmative defense, by admitting most of the elements or the elements relating to the act, the conduct, constitutes a waiver of the right to demand proof of those elements, then that theory would apply to any affirmative defense, wouldn't it? And so we'd have to look very broadly at the implications of your argument, it seems to me. I disagree, Your Honor. And I think it's only insanity because the State is correct. There is case law that says this is not a waiver. We can only argue that this is akin to a waiver. And the reason it is of special concern in an insanity defense is because you have a court on notice that there are some real concerns, especially in a case like Mr. Rogovich's where you know the defendant has been moved to suicide ward at one point. Counsel has said, I can't communicate with him. He's on psychotropic medications. You have a court that's on notice that this is a defendant who has some serious issues and special care needs to be taken to make sure that they understand the implications, not just competency is not enough. It is analogous to the cases such as Godinez and Edwards' pleas in representing oneself. And the strongest authority for that, Supreme Court authority for that? That it is, I would say Godinez and Edwards. Godinez, which is not an insanity case. Correct. If the Court has no further questions, I'll reserve the remainder of the time. You may do so, counsel. That's fine. We'll hear from the State. Good morning, Your Honors. May it please the Court. Julie Doan representing Doris Shriver, now Charles Ryan, in this case. Right. We need a substitution of the defendant, I guess. I thought we had done one. Yeah. If we haven't, I'll make sure it gets done. Yeah. Would you please do that? Yes, Your Honor. And first I'd like to start by responding to the Court's question of how the result in this case would have been different if appellate counsel had raised the issues of the aggravating circumstance of the F-8 and the prosecutor's comments in closing. So you're assuming that this lawyer didn't do much. I mean, that seems to be true. The lawyer did not do much. It appears that, yeah, he did not do much as far as the briefing or an argument, but that does not mean that he was ineffective just because he didn't do much. And a trial or a counsel's job, first and foremost, is to be an attorney and only raise colorable, meritorious claims. He shouldn't raise frivolous claims. So whether or not it is a death penalty case or he's trying to represent his client, you know, to the fullest extent of the law, he still has to be an attorney and only raise colorable, meritorious claims. Our response would be those claims were not colorable or meritorious, so there was no ineffective assistance of counsel by not raising them. The result would not have been different if he'd raised them. Under Arizona law, they would have still found the F-8, which they did in this case under independent review. What does motivational mean in this context under Arizona law? If someone says, I'm going to kill random victims in this place, I don't know any of them, I have no particular reason to kill any of them, does that count as a motivational tie or does it mean some discernible, rational basis that other people can understand? I would argue that the Arizona Supreme Court's analogy of this case to or citing labors in this case where they say given Rogovich's continuous course of conduct, so they looked at the three factors, temporal, spatial, and motivational relationships, and as they say, we would analyze those factors. And given Rogovich's continuous course of conduct, they found that the trial court correctly found this aggravating circumstance. So I think they look at them together and also, as you said, like a spree, a crime spree, that it's this continuous course of conduct. You don't have to go, okay, when did they happen? Okay, have we met the time factor? But what does motivational have to do with it? I suppose if you knew that one person was being killed because they'd had an argument over some money and another person because they'd stolen the girlfriend, then you would know that they weren't motivationally connected. They were just happenstance. But where you don't really know a reason, what does motivational mean? What does it add to the mix? I would argue it's just one more part of the analysis in determining whether there was a continuous course of conduct. And a good example of that is in this case where they didn't find that the F-8 applied to the store clerk who was killed in the morning. I mean, I would argue even if they said that it was the time or spatial. Did not apply to that. Did not apply. Just to the trailer part. To the three that happened in what we would call a continuous course of conduct where you just went on a killing spree. Counsel, I'm looking at Judge Feldman's, Justice Feldman's opinion on page 78 of the record. I don't have State v. Libraries in front of me, but he doesn't seem to mention motivational at all. And I'm just wondering, is that a problem? Is that a defect that we should look at more closely? What does Lavers say? Well, in what the court cites to is that what you're talking about here where he says in State v. Lavers we have held that determining whether F-8 applied to a particular set of circumstances. And he mentions temporal, spatial, motivational. But that's the only reference. There's no discussion of motivational here. Well, I would argue that the three of them go to the continuous course of conduct and you don't have to prove each independently and say this was satisfactory. Is that what Lavers says? Yes. All right. Yes. Well, it says it's a continuous course of criminal conduct, which I assume says the motivation is the same for all of them. Yes. And that's really what you have to say. It seems like they're saying all three of those factors go to a continuous course of criminal conduct. Or you could say that a continuous, I read this quote from Ramirez to be saying that a continuous course of criminal conduct allows you to infer that there is this relationship that's required. Yes. And I agree. That's what they said in Ramirez, that they were committed in a relatively short period of time in what can fairly be viewed as one continuous course of criminal conduct. So they seem to equate those three factors, I would call them, or part of their, three parts of their analysis. The relationship is there. Exactly. Exactly. And I would definitely argue that there's no prejudice for not raising the FAA aggravating factor, because it was reviewed on independent, was reviewed by the Arizona Supreme Court on independent review. And they even found in State v. Dan in the Arizona Supreme Court where it wasn't even raised in the trial court, they said that because the Supreme Court reviewed it on independent review, that any error by that trial court not analyzing that issue is harmless. Do you want to speak to the ---- I wasn't sure if you had a question. No, go ahead. No, just thinking. Just thinking. Okay. Do you want to speak to the consent to the insanity defense? Yes, Your Honor. The insanity defense does not require an on-the-record consent or waiver. Appellate relies on Godinez and Edwards as their U.S. Supreme Court cases governing this claim. We would argue they don't govern this claim. Godinez regards a guilty plea in which you have to have an on-the-record waiver. As the Supreme Court, the Arizona Supreme Court cited when they looked at this issue, they cited hurls. And they said that this is distinctly different than a guilty plea because when you're raising a defense of insanity, let me look at my notes and make sure I quote it correctly here, you do not vitiate the presumption of innocence or negate the State's burden of proof. So that's why this is distinctly different than a guilty plea. So even though they generally will admit that the ---- Well, that's under Arizona law, I assume. Yes. Now, the argument is made here under Federal law. Under Federal law, on the two cases that they're arguing apply to this case, we would argue don't apply to this case, that they have to do with guilty pleas. Because they have to do with guilty pleas. Guilty pleas. And we're saying that's distinctly different where you do need an on-the-record consent to a guilty plea because that's one of the constitutional rights, is pleading guilty. So there could be no error under habeas review, Your Honor? No, Your Honor. What do you make of the fact that the State court used the language that he was present at all critical moments during the trial? And he wasn't there during the voir dire when it was most clearly stated that this defense was going to be relied on? Our review of the record reveals that he was present at at least six pretrial hearings, three of which occurred after he had been found competent to stand trial. And at all three of those, the insanity defense was discussed or, by that point, there's no reason that he wouldn't have known that an insanity defense was going to be alleged in this case or put on as a defense by his attorney. We just don't see how that could be clear. And it was, again, raised in opening statements. So at that point, if he had some issue with it or objected to it, he could have objected at that point. He never said anything. Were there mental examinations of him? There's an awful lot of medical evidence about his mental state in this record. After the competency determination, were there further mental examinations of him? Or can you recall? I can't recall. I believe there were when they were talking to him about – and I can't remember from the record if they determined competency and also evaluated him to determine his offense at the time of the crime. My recollection is that there were some further evaluations when they knew that this was going to be a defense that the State was permitted to examine. But I just don't remember. In any event, he participated in all of the examinations. Yes. Yes, and three of the four experts, like Justice Graber said, found him competent to stand trial. And if there are no further questions. Any further? I'm sorry. If there's no further questions, we would just submit on the briefs. We have further questions. Thank you, counsel. Thank you very much. Ms. Stone, you have some reserve time. Very briefly, there is – Stone and Doan. We planned it. It's the Dr. Seuss argument. There's an additional case I would like to bring to the Court's attention. Again, I can see that it is after the time that the State has decided on this case. The trial court and the court of – excuse me, the State Supreme Court was looking at this issue. But State v. Moore says that the burden is on the State to prove the motivational relationship beyond a reasonable doubt. This is, again, a good example of why independent review was insufficient here with counsel who could have aggressively argued this issue where you have the trial court saying, I don't find a motivational connection. That's a concern. And without that, again, F-8 should not apply. State v. Armstrong. I'm not sure that I read that as quite that way. There was no rational motive. There's a problem about there not being a rational motive. But the question of whether or not there's a motivational relationship, it seems to me, is a little bit different. I think that the trial judge – I agree with you. He said he couldn't find any motivation for any of the cases. Yeah, right. And thus struggled to find a motivational connection between them because he couldn't find a motivation at all. Excuse me, counsel. Did you say State v. Morris? Moore. Moore. Moore. State v. Moore. Yes. Thank you. And that's a 2009 case. So, again, it is later, but I think it's an important case because the judge struggled with it. Clearly, the State did not prove any motivation, much less a motivational connection beyond a reasonable doubt, to the sentencing judge. Also, State v. Armstrong says that temporal, spatial, and motivational relationship are necessary for a continuing course of conduct, so that you need those three to get the continuing course of conduct, where the Rogovich decision says, well, the continuous course of conduct sort of fills in the hole with that missing motivation. No, no. It simply quotes. I was just interpreting the quotes. The quotes from, now I've forgotten the name. Ramirez, I believe. It's just a block quote from State v. Ramirez. And, again, Ramirez is a case where it was very easy to read in the connection like Armstrong. Armstrong says where there's no reasonable jury that could find the motives for the homicides unrelated. And I'd submit that Rogovich's case is not that case. In Laver's, the court finds the continuous course of conduct by stating a domestic dispute appears to be the motivation for these two murders of related victims, and both murders were part of a continuous course of criminal conduct. So that's how they get there in Laver's, that the motivation, while not necessarily admitted to by the defendant, was very clear. You know, back in law school, I remember being taught that motive was not an element of proving murder. And I think in most states that's still true, even though prosecutors like to do it. But the result of your argument really is that in Arizona, someone is not going to be death-eligible who kills more than one person unless the State does prove motive. Is that sort of a backdoor addition of an element into the crime? I think they're still death-eligible. I would also note that I looked at every case that applied F-8, I think, in Arizona. I hope I didn't miss any. And only one other case, which is Nordstrom, had F-8 and F-1. And in many cases, I think the F-1 factor can fill in where the F-8 does not apply. And Nordstrom was very different than Mr. Rogovich's case because the murder that satisfied the F-1 requirement was almost a month prior. It wasn't a scenario like this where mere hours separated it. So I disagree that they wouldn't be death-eligible. They might, that this especially weighty aggravator may not apply, but death eligibility through other aggravating factors would be there. Again, I just want to emphasize with the little time that I have remaining, as Judge O'Scallion pointed out, the State Supreme Court really glossed over motivation, and this is why you can't rely on independent review in a case like this. I am not here to argue it's never enough to overcome prejudice, but in this case, it's not. With a lawyer who is serving as an advocate, who is able to vigorously point out the problems with the F-8 factor, as well as the prosecutorial misconduct that went to the core of Mr. Rogovich's affirmative defense, the Court would have been aided by counsel. Here, the abandonment of Rogovich as to sentencing claims really hamstrung the Court, and they were left with the barren record, which, Anders warns us, is of concern. Let me just ask you one question on the waiver. You're not arguing that the defendant's counsel can't waive his presence at Vardyar. It's only that in this Vardyar, there happened to be the subject of the insanity defense that was discussed, is that correct? Correct. And Vardyar is a critical phase, so that when the State supreme court said Rogovich was present for all critical phases. Well, yeah, I understand that. Yeah. Okay. Thank you, counsel. The case just argued will be submitted for decision, and the Court will adjourn. Period, period. All persons having had business with the Honorable United States Court of Appeals and the United States Circuit will now depart. For this Court, this session will now begin.
judges: Schroeder, O'scannlain, Graber